**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| David Gordon Oppenheimer,<br><br>Plaintiff,<br><br>v.<br><br>McEwen Marketing, Inc. and<br>Stephen J. McEwen,<br><br>Defendants. | Case No: 1:26-cv-07539 |

**COMPLAINT AND JURY DEMAND**

Plaintiff, DAVID GORDON OPPENHEIMER ("Oppenheimer" or "Plaintiff"), by and through his attorneys, ZLATKIN CANN ENTERTAINMENT, for his complaint ("Complaint") against Defendants MCEWEN MARKETING, INC. and STEPHEN J. MCEWEN (collectively, "Defendants"), alleges:

**NATURE OF THE ACTION**

1.      This action arises under the United States Copyright Act, 17 U.S.C. §§ 101 *et seq.* and 17 U.S.C. §§ 501 *et seq.*, for copyright infringement of a work registered with the United States Copyright Office.

**THE PARTIES**

2.      Oppenheimer is an individual who is actively engaged in the business of creating and licensing photography and who resides in Asheville, North Carolina.

3.      Defendant MCEWEN MARKETING, INC. ("McEwen Marketing") is, upon information and belief, an Illinois corporation with a principal office to do business in Cook County, Illinois. Upon information and belief, McEwen Marketing is a real estate brokerage and marketing business that advertises and markets residential real estate for sale, including through multiple listing services and online real estate listing platforms.

4.    Upon information and belief, Defendant STEPHEN J. MCEWEN, also known as Steve McEwen ("McEwen"), is an individual residing in Cook County, Illinois, and at all relevant times held an ownership interest in McEwen Marketing, was the principal of McEwen Marketing, and was a licensed real estate broker who conducted business through McEwen Marketing.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    Plaintiff is informed, believes, and thereon alleges that Defendants have sufficient contacts with this District generally and, in particular, with the events alleged herein, that Defendants are subject to the exercise of jurisdiction of this Court. Specifically, each of the Defendants is domiciled in this District and, upon information and belief, all of the Defendants' actions giving rise to Plaintiff's claims occurred within this District.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(a).

## FACTUAL ALLEGATIONS

8.    Oppenheimer is a noted and respected professional photographer with many years of experience and considerable reputation.

9.    Oppenheimer's photographs have appeared in publications including Rolling Stone, MSNBC, MTV, AOL, National Geographic, Fuse TV, and have been displayed at the Museum of the City of New York. The subjects of Plaintiff's photography include Bob Dylan, Bruce Springsteen, Carlos Santana, and Paul McCartney, among countless other instantly recognizable persons and places, including Chicago, Illinois.

10.    Oppenheimer has, over the years, performed photography services through his own name as well as under the trade name "Performance Impressions." Performance Impressions LLC,

which is owned and operated exclusively by Oppenheimer, is a North Carolina limited liability company in good standing.

11.     Oppenheimer earns his livelihood from the creation and licensing of his photographs as well as from selling prints of his photographs.

**Oppenheimer Creates, Registers, and Publishes the Photograph**

12.     In early July 2015, Oppenheimer traveled to Chicago. During this visit, Oppenheimer created an aerial photograph of Montrose Beach in Chicago ("Photograph") through significant skill and personal expense. Specifically, Oppenheimer chartered a doors-removed helicopter and then captured the Photograph by physically operating professional camera equipment while leaning out of the doors-removed helicopter. This required skill and experience to best capture the aerial perspective.

13.     The Photograph is an original work that Oppenheimer registered with the United States Copyright Office as part of a collection of photographs. The Photograph – referenced by its contents title, *Montrose_Beach_Chicago_aerialdsc_0978.jpg* – has its copyright registered with the United States Copyright Office as part of the collection entitled *Chicago Travel and Aerial Photographs Including The Grateful Dead at Soldier Field* under copyright registration number VAu 1-229-868, with an effective date of registration of July 26, 2015. A copy of the copyright registration certificate for the Photograph is attached hereto as Exhibit 1. The Photograph is identified by its contents title on page 1 of the certificate. The deposit copy of the Photograph on deposit with the copyright registration is attached hereto as Exhibit 2.

14.     After submitting the Photograph for registration, Plaintiff published the Photograph through the Performance Impressions website, where Oppenheimer makes his works available for print sales and licensing, and through the website Flickr.com. As is his pattern and practice, the

published version of the Photograph contained copyright management information ("CMI") as defined under 17 U.S.C. § 1202(c), including a visible watermark complying with notice of copyright provisions (17 U.S.C. § 401(d)) on the face of the Photograph and notice of copyright embedded in the metadata of the Photograph. CMI in the metadata of the Photograph included proper notices of copyright, and notices declaring "All Rights Reserved" in addition to instructions for licensing, Oppenheimer's address, phone number, email, and the Performance Impressions website URL. On Flickr, in addition to all of the CMI set forth above, the Photograph was published alongside the notice "© 2015 David Oppenheimer" and "All Rights Reserved" and clicking the "Show settings" followed by "Show EXIF" links makes all of Oppenheimer's metadata visible, containing all of the above-stated CMI. Oppenheimer does all this to distinguish his works from others, as well as to ensure that people who view the Photograph appreciate that Oppenheimer owns all rights and title to the Photograph and follow proper protocols in licensing the Photograph. Plaintiff's published version of the Photograph (as published on the Performance Impressions website and on Flickr) is attached as Exhibit 3 hereto bearing this subsequently added CMI on the face of the Photograph.

15.     Plaintiff has complied in all respects with Title 17 of the United States Code (Copyright Act of 1976) and all other United States laws governing copyrights and has secured the exclusive rights and privileges in and to the copyright of the Photograph.

16.     Since the Photograph's date of creation, Plaintiff has held all the exclusive rights to the Photograph, including, without limitation, the rights to reproduce the work, to prepare derivative works, to distribute copies to the public, and to publicly display pursuant to 17 U.S.C. § 106.

17.     Plaintiff's copyright in the Photograph is presently valid and subsisting and has been valid and subsisting since the moment of creation and all conditions precedent to the filing of this suit have been satisfied including registration under 17 U.S.C. § 411(a).

**Defendants Use the Photograph Without Authorization**

18.     McEwen, a licensed real estate broker, marketed and advertised for sale the residential property located at 3720 North Lake Shore Drive, Unit 1D, Chicago, Illinois ("Property"). Upon information and belief, one or more of the Defendants (or their employees, agents, or representatives) obtained the published version of the Photograph and, without Oppenheimer's authorization, caused the Photograph to be reproduced and displayed in the listing for the Property, including by uploading the Photograph to the multiple listing service known as Midwest Real Estate Data ("MRED" or "MLS"). The version of the Photograph used by Defendants bore Oppenheimer's visible watermark and copyright notice.

19.     Upon information and belief, Defendants' upload of the Photograph to the MLS caused the reproduction, distribution, and/or display of the Photograph through at least the following URLs (collectively, "Infringing URLs"):

- https://www.bexrealty.com/Illinois/Chicago/3720-N-Lake-Shore-Dr-1d/home/
- https://www.compass.com/listing/3720-north-lake-shore-drive-unit-1d-chicago-il-60613/1229120934659780841/
- https://www.estately.com/listings/info/3720-n-lake-shore-drive-chicago-il-60613
- https://www.homes.com/property/3720-n-lake-shore-dr-chicago-il-unit-1d/p1pevzsn7cvmg/
- https://www.homesnap.com/IL/Chicago/3720-N-Lake-Shore-Drive/property/28345528
- https://www.movoto.com/chicago-il/3720-n-lake-shore-dr-1d-chicago-il-60613-461_07848550/
- https://www.realtor.com/realestateandhomes-detail/3720-N-Lake-Shore-Dr-1D_Chicago_IL_60613_M83333-49197

- https://www.redfin.com/IL/Chicago/3720-Lake-Shore-Dr-60613/unit-1D/home/183686242
- https://www.trulia.com/p/il/chicago/3720-n-lake-shore-dr-1d-chicago-il-60613--2180412721?mid=0#lil-mediaTab
- https://www.unrealestate.com/il/cook/chicago/3720-n-lake-shore-drive-unit-1d/mred-6a4f9717-1940-4177-a84c-4d2766ffa554
- https://www.zillow.com/homedetails/3720-N-Lake-Shore-Dr-1D-Chicago-IL-60613/2062856127_zpid/
- https://tour.vht.com/434299220/3720-n-lake-shore-drive-unit-1d-chicago-il-60613/photos
- https://images-prd.bexrealty.com/Illinois/Chicago/3720-N-Lake-Shore-Dr-1d/11705109-173-home-15.sm.jpg
- https://www.compass.com/m/ba9db799f93cbec3929b0503a6f2ffcb84358be2_img_14_1645a/origin.webp
- https://images.estately.net/142_MRD11705109_14_1674333974.jpg
- https://images.homes.com/listings/112/9572751792-900187841-original.jpg
- https://images.homesnap.com/listings/302/9572751792-900187841-original.jpg
- https://pi.movoto.com/p/461/11705109_0_bFBQnq_r.jpeg
- https://ap.rdcpix.com/d638609c22b8b3bd75b8115fa605e9c8l-m2154551754od-w1024_h768_x2.webp
- https://ssl.cdn-redfin.com/photo/68/bigphoto/109/11705109_14_0.jpg
- https://www.trulia.com/pictures/thumbs_6/zillowstatic/fp/004575a4ca81eea91aac38335ee80729-full.webp
- https://photos.unrealestate.com/il/chicago/6a4f9717-1940-4177-a84c-4d2766ffa554/attached-single-at-3720-n-lake-shore-drive-unit-1d-15-original.jpg
- https://photos.zillowstatic.com/fp/004575a4ca81eea91aac38335ee80729-uncropped_scaled_within_1536_1152.webp
- https://cdn.vht.com/cdn/images/API/T434299220/still/large_900004.jpg

20.     Upon information and belief, one or more of the Defendants, or a third party at the direction of one or more of the Defendants (such third party, if any, a "Third-Party Marketing Agent"), reproduced, distributed, and/or displayed the Photograph at the Infringing URLs to advertise and market the Property and the real estate brokerage and marketing services offered by Defendants. True and correct copies of screenshots of the displays of the Photograph at most of the Infringing URLs are attached hereto as Exhibit 4.

21.     Upon information and belief, the upload of the Photograph to the MLS by McEwen Marketing and/or McEwen (or by an agent of McEwen Marketing acting at McEwen's direction or with McEwen's authorization) caused the Photograph to be syndicated and republished to the third-party real estate listing platforms at the Infringing URLs.

22.     Upon information and belief, given Defendants' experience as real estate professionals who routinely use the MLS, Defendants knew, or reasonably should have known, that content uploaded to the MLS would be distributed and displayed across numerous third-party real estate listing websites, and such downstream distribution was a foreseeable result of Defendants' conduct.

**Oppenheimer Provides Notice of Copyright Infringement to Defendants**

23.     On January 24, 2025, Oppenheimer, through counsel, sent McEwen and McEwen Marketing a written notice of copyright infringement, transmitted via United States Postal Service Priority Mail and email, identifying the infringement of the Photograph and demanding that Defendants cease all use of the Photograph.

24.     McEwen responded to Oppenheimer's counsel by email the same day, January 24, 2025. McEwen asserted that he had, in 2023, emailed a former real estate client whom he believed to be named "David Oppenheimer" to request permission to use the Photograph for a Lake Shore Drive listing.

25.     The individual McEwen purportedly contacted in 2023 was David I. Oppenheimer, a different person from Plaintiff, David Gordon Oppenheimer. Plaintiff is not, and never has been, a client of McEwen or McEwen Marketing, and Plaintiff never authorized McEwen or McEwen Marketing to use the Photograph. Upon information and belief, McEwen never received

permission to use the Photograph from any person, including from the individual McEwen purportedly contacted for permission.

26. Over the following months, Oppenheimer's counsel and McEwen exchanged further communications, including in June 2025, July 2025, and October 2025. McEwen did not dispute that the Photograph had been used.

27. McEwen further alleged that the Photograph had been uploaded to the MLS by an assistant who is no longer employed by McEwen Marketing.

28. Thereafter, McEwen retained counsel, and the parties entered into successive tolling agreements while continuing to engage in settlement discussions. The parties did not reach a resolution, and counsel for McEwen ceased responding to Oppenheimer's counsel in June 2026.

29. Oppenheimer brings this action within the time permitted under the parties' tolling agreements.

**FIRST CLAIM FOR RELIEF**
**Copyright Infringement Under 17 U.S.C. § 501**
**(Against All Defendants)**

30. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–29 of this Complaint.

31. Plaintiff owns the exclusive rights to the copyright-protected Photograph.

32. Upon information and belief, one or more of the Defendants caused the copying, distribution, and/or display of the Photograph at each of the Infringing URLs.

33. Defendants' acts are and were performed without the permission, license, or consent of Plaintiff.

34. Defendants acted with willful disregard of the laws protecting Plaintiff's copyright.

35. Defendants infringed Plaintiff's copyright in the Photograph in violation of 17 U.S.C. § 501.

36. Oppenheimer has been harmed by the infringement in multiple ways. Plaintiff has sustained and will continue to sustain substantial damage in an amount not yet fully ascertainable. Defendants have benefited from their infringement of the Photograph. Defendants' unauthorized use undermined the Photograph's exclusivity, diminished the Photograph's licensing value, and caused ongoing injury to Oppenheimer's business reputation and professional goodwill, thereby impairing Plaintiff's control over the manner and context in which his work is presented to the marketplace. Such loss of control and reputational harm is continuing in nature and not fully compensable through monetary damages alone. Accordingly, Oppenheimer is entitled to injunctive relief, damages, and other relief authorized under the Copyright Act.

37. Upon information and belief, Defendants have obtained profits recoverable under 17 U.S.C. § 504. Plaintiff will require an accounting from the Defendants of all monies generated from the Photograph.

38. In the alternative and at his election, Plaintiff is entitled to seek maximum statutory damages for willful infringement by Defendants of Plaintiff's rights in the Photograph in an amount of $150,000 under 17 U.S.C. § 504(c)(2). In the event that the trier of fact does not find that Defendants willfully infringed Plaintiff's copyright in the Photograph, Plaintiff is entitled to seek maximum statutory damages in an amount of $30,000 under 17 U.S.C. § 504(c)(1).

39. Plaintiff is entitled to seek recovery of Plaintiff's attorneys' fees and costs of suit from the Defendants, pursuant to 17 U.S.C. § 505.

### SECOND CLAIM FOR RELIEF
### Vicarious Copyright Infringement
### (In the Alternative Against McEwen)

40. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–39 of this Complaint.

41.    At all relevant times, McEwen was the principal of McEwen Marketing and was the licensed real estate broker who listed, marketed, and advertised the Property using the Photograph. McEwen is identified as the listing broker in the Property listing in which the Photograph was used.

42.    Upon information and belief, McEwen personally participated in, approved, authorized, and/or supervised the listing, marketing, and advertising of the Property using the Photograph. As the listing broker and principal of McEwen Marketing, McEwen had the right and ability to supervise and control the infringing conduct and possessed a direct financial interest in the marketing and sale of the Property promoted using the Photograph (as well as a direct financial interest in the overall financial performance of McEwen Marketing). Accordingly, McEwen is personally liable as a joint infringer and/or vicariously liable for the infringing acts of McEwen Marketing.

### THIRD CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against McEwen)

43.    Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–39 of this Complaint.

44.    Alternatively, McEwen intentionally induced, encouraged, authorized, and/or materially contributed to the infringements by approving and disseminating, and holding himself out as the listing broker for, the Property listing containing the Photograph.

45.    Upon information and belief, as the principal of McEwen Marketing, McEwen at all relevant times was the dominant influence in McEwen Marketing. McEwen provided hands-on decision making with respect to the activities of McEwen Marketing, set and controlled the policies and protocols of McEwen Marketing, and established corporate rules and cultures which encouraged the infringing activities. McEwen therefore had actual knowledge of McEwen

Marketing's infringing activities or chose to remain willfully blind to the infringing activities while creating a work environment that encouraged and enabled the same.

46. Accordingly, McEwen is personally liable to Oppenheimer as a contributory infringer for the infringing activities of McEwen Marketing.

**FOURTH CLAIM FOR RELIEF**
**Vicarious Copyright Infringement**
**(In the Alternative Against McEwen Marketing)**

47. Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–39 of this Complaint.

48. Pleading further but without waiver of the foregoing, Oppenheimer shows that, at the time any Third-Party Marketing Agent involved in the marketing or advertising of the Property performed the infringing acts of publishing the Photograph at the Infringing URLs, such Third-Party Marketing Agent was an agent of McEwen Marketing. Specifically, upon information and belief, McEwen Marketing engaged a Third-Party Marketing Agent to provide marketing, advertising, and/or digital listing services for the benefit of McEwen Marketing.

49. Upon information and belief, as the client for whose benefit such marketing, advertising, and/or digital listing services were provided by a Third-Party Marketing Agent, at all relevant times McEwen Marketing had the authority to control the publication of the Property listing, including at the Infringing URLs. As a result, at all relevant times McEwen Marketing had the right and ability to supervise and/or control the infringing conduct with respect to the Infringing URLs, and/or to stop the infringements once they began.

50. Upon information and belief, McEwen Marketing had an obvious and direct financial interest in these infringing activities of a Third-Party Marketing Agent, because the Third-Party Marketing Agent's use of the Photograph on the Infringing URLs advertised and promoted the Property and the services of McEwen Marketing, thereby encouraging viewers to

purchase the Property and to retain McEwen Marketing's real estate brokerage and marketing services. Infringement of the Photograph allowed McEwen Marketing to promote and sell the Property and McEwen Marketing's services more effectively by drawing, capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image, and reputation of McEwen Marketing.

51.     Accordingly, McEwen Marketing is personally liable to Oppenheimer as a joint infringer or is otherwise vicariously liable for the actions of any Third-Party Marketing Agent.

## FIFTH CLAIM FOR RELIEF
### Contributory Copyright Infringement
### (In the Alternative Against McEwen Marketing)

52.     Plaintiff repeats and incorporates herein by reference the allegations in Paragraphs 1–39 of this Complaint.

53.     Alternatively, McEwen Marketing has intentionally induced, encouraged, caused, enabled, facilitated, and/or materially contributed to the infringements complained of herein by directly and/or indirectly promoting the infringements.

54.     Upon information and belief, having obtained a copy of the Photograph without authorization from Oppenheimer, McEwen Marketing had sufficient knowledge that provision of the Photograph to any Third-Party Marketing Agent for publication in connection with a listing promoting the Property and McEwen Marketing's services would infringe upon Oppenheimer's rights in the Photograph.

55.     Accordingly, McEwen Marketing is personally liable to Oppenheimer as a contributory infringer for the infringing activities of any Third-Party Marketing Agent.

## JURY DEMAND

Plaintiff requests a trial by jury for all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment against Defendants as follows.

a.   Pursuant to 17 U.S.C. § 502, that Defendants and Defendants' agents, servants, employees, representatives, successors, and assigns, and all persons, firms, corporations, or other entities in active concert or participation with Defendants, be permanently enjoined from directly or indirectly infringing the Plaintiff's copyrights in any manner, including generally, without limitation, reproducing, distributing, displaying, or making derivative works of the Photograph;

b.   That Defendants be required to perform a complete and full accounting of all profits generated by Defendants from the Photograph;

c.   Pursuant to 17 U.S.C. § 504, that Defendants be required to pay actual damages and disgorgement of all profits derived by Defendants from their acts of copyright infringement; in the alternative, upon Plaintiff's election, pursuant to 17 U.S.C. § 504, that Defendants be required to pay statutory damages up to $150,000 for each work infringed as a result of Defendants' acts of copyright infringement, and, in the event that the factfinder determines that either of the Defendants' infringements was not willful, that Defendants be required to pay statutory damages up to $30,000 for each work infringed by the Defendants found to be not willful;

d.   Pursuant to 17 U.S.C. § 505, that Defendants be required to pay Plaintiff the costs of this action, prejudgment interest, and reasonable attorneys' fees; and

e.   Such other and further relief as the Court shall find just and proper.

Dated: June 26, 2026

Respectfully submitted,

**ZLATKIN CANN ENTERTAINMENT**

By: /s/ *Ilya G. Zlatkin*
Ilya G. Zlatkin (ARDC No. 6314344)
ZLATKIN CANN ENTERTAINMENT
4245 North Knox Avenue
Chicago, Illinois 60641
Tel: (312) 809-8022
Fax: (312) 809-6918
ilya@zce.law

*Attorneys for Plaintiff David Gordon Oppenheimer*